UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JAMES J. RUANE, MIGUEL CASTRO, | : | DOCKET NO. 3:20-CV-00813 (KAD) |
| RICHARD BROWN and JUAN VASQUEZ | : | |
|    *Plaintiffs* | : | |
| | : | |
|      v. | : | |
| | : | |
| HONORABLE PATRICK CARROLL, III | : | |
|    *Defendant* | : | JULY 8, 2020 |

### Memorandum In Support of Defendant Judge Carroll's Motion to Dismiss

There is no question that the pandemic caused by COVID-19 has required a "rapid reorientation of workplace practices and social life in support of public health." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 135 (2d Cir. 2020). Essential government functions, including court operations, were—and are—no exception.

"Our Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" *S. Bay United Pentecostal Church v Newsom*, 140 S. Ct. 1613, 1613 (2020) ("*S. Bay*") (Roberts, C.J., concurring in denial of application for injunctive relief) (quoting *Jacobson v. Massachusetts*, 197 U.S. 11, 38 (1905)). When Governor Lamont issued a public health emergency and civil preparedness emergency declaration on March 10, 2020, there were 5 confirmed cases of COVID-19 in Connecticut.[1] (A001). Only one month later, by April 10, 2020, 10,538 Connecticut residents had been diagnosed with COVID-19 and 448 Connecticut residents had died. (A002). By June 12, 2020, when

---

[1] All data about COVID-19 statistics in Connecticut are taken from the state of Connecticut COVID-19 data portal at https://data.ct.gov/stories/s/COVID-19-data/wa3g-tfvc/. This Court may take judicial notice "of basic facts about the pandemic that are not reasonably in dispute." *U.S. v. Rodriguez*, 2020 WL 3051443, at *1 n.2 (S.D.N.Y. June 8, 2020). For the Court's convenience, Defendant Honorable Patrick Carroll has provided an excel spreadsheet of the Connecticut's COVID-19 data in an Appendix that includes other materials of which this Court may properly take judicial notice.

Plaintiffs filed this complaint, there were 44,994 cases of COVID-19 in Connecticut and 4,186 people had died. (A003). Under Connecticut law, the pandemic emergency gave Defendant Honorable Patrick Carroll III ("Judge Carroll"), as the administrative director of the Judicial Branch pursuant to Conn. Gen. Stat. § 51-5a, the authority to shape the Judicial Branch's response. Judge Carroll has used that authority to issue carefully-crafted Orders intended to strike the appropriate balance between ensuring that essential judicial business is effectively handled by Connecticut state courts while, at the same time, protecting the people of Connecticut (including court staff and litigants) from this novel and deadly disease.

"The precise question of when restrictions on particular social activities should be [imposed and] lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement." *S. Bay*, 140 S. Ct. at 1613 (Roberts, C.J., concurring in denial of application for injunctive relief). When state officials like Judge Carroll "'undertake[ ] to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad.'" *Id.* (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974)). "Where those broad limits are not exceeded, they should not be subject to second-guessing by an 'unelected federal judiciary,' which lacks the background, competence, and expertise to assess public health and is not accountable to the people." *Id.* (quoting *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545 (1985)). Despite that clear guidance from the United States Supreme Court in place for well over a century and reinforced before Plaintiffs filed their Complaint, Plaintiffs ask this Court to second-guess Judge Carroll's actions as Chief Court Administrator in response to the unprecedented COVID-19 pandemic, declare those actions unconstitutional, and seek injunctive and declaratory relief from Judge Carroll's Orders. This Court should dismiss Plaintiffs' claims against Judge Carroll in their entirety.

## Factual and Procedural Background[2]

Plaintiffs are Angel Miguel Castro, Richard Brown, Juan Vazquez and James Ruane. Plaintiffs Castro and Brown are defendants in criminal actions that are pending at the New Haven Geographic Area 23 and Fairfield Judicial District, respectively. *Complaint* (hereinafter "*Compl.,*") ¶ 45 on p. 11, ¶ 40 on p. 12.[3] (A059, A086, A089, A092). Plaintiff Vazquez is the petitioner in a state habeas petition who is seeking review of his sentence. *Compl.*, ¶ 42 on p. 13. (A103). Plaintiff Ruane is an attorney who is licensed to practice law in Connecticut. *Compl.*, ¶ 43 on p. 15.

### The Connecticut Judicial Branch's Response to the COVID-19 Pandemic

Under Connecticut law, as Chief Court Administrator, Judge Carroll is the primary individual responsible for the efficient operation of the Judicial Branch in all circumstances, including emergency response. On March 10, 2020, the Governor "declare[d] a public health emergency and civil preparedness emergency throughout the State, pursuant to Sections 19a-131a and 28-9 of the Connecticut General Statutes" in response to the COVID-19 pandemic. *Compl.* ¶ 30 on p. 6. (A004-A005).

---

[2] All facts not drawn from the Complaint are drawn from the pleadings in the state court action or are public records. This Court may rely on these documents, both because they are public records of which the court may take judicial notice and because they were incorporated into Plaintiffs' Complaint by reference. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991); *In re WorldCom, Inc.*, 708 F.3d 327, 339 n. 63 (2d Cir. 2013); Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 402 (2d Cir. 2003) (taking judicial notice of state court records on a 12(b)(1) motion). Documents are considered incorporated by reference when

[3] Plaintiffs' Complaint is mis-numbered and, as a result, contains multiple sets of paragraphs with the same numbering. Therefore, to assist the Court, Judge Carroll will provide citations to both the paragraph numbers and their page numbers where necessary to make the citation clear.

On March 12, 2020, pursuant to his emergency response authority under Conn. Gen. Stat. § 51-5a(a)(6),[4] Judge Carroll ordered that effective immediately, Connecticut Superior Courts would only hear essential or "Priority 1" matters. Those matters were identified as: (1) criminal arraignments of defendants held in lieu of bond and all arraignments involving domestic violence cases; (2) juvenile detention hearings; (3) family orders of relief from abuse; (4) civil orders of relief from abuse; (5) civil protection orders; (6) *ex parte* motions; (7) orders of temporary custody (Juvenile Matters); (8) orders to appear (Juvenile Matters); (9) emergency *ex parte* orders of temporary custody; (10) juvenile detention operations for detainees held for juvenile court; (11) termination of parental rights; (12) domestic violence victim notification; and (13) civil and family capias mittimus execution and bond review. *Compl.* ¶ 31on pp. 6-7. (A037). In addition, all jury trials, except those currently in progress and criminal jury trials necessitated by the filing and granting of speedy trial motions, were suspended until further notice. *Compl.* ¶ 32 on p. 7. (A037).

Beginning on March 18, 2020, the Judicial Branch began limiting the number of courthouses that would be open to hear essential matters, the hours of operation of the open courthouses and who could physically enter the courthouses that remained open. *Compl.* ¶ 33 on p. 7. (A036). By April 14, 2020, court business was being heard at ten courthouses from 9am-5pm

---

[4] Conn. Gen. Stat. § 51-5a provides in relevant part: "The Chief Court Administrator: (1) Shall be the administrative director of the Judicial Department and shall be responsible for the efficient operation of the department, the prompt disposition of cases and the prompt and proper administration of judicial business; . . . and (6) may take any action necessary in the event of a major disaster, emergency, civil preparedness emergency or disaster emergency, as those terms are defined in section 28-1, or a public health emergency, as defined in section 19a-131, to ensure the continued efficient operation of the Supreme, Appellate and Superior Courts, the prompt disposition of cases and the proper administration of judicial business, which necessary action may include: (A) Establishing alternative locations to conduct judicial business in the event that one or more court locations cannot be used, (B) suspending any judicial business that is deemed not essential by the Chief Court Administrator, and (C) taking any other appropriate action necessary to ensure that essential judicial business is effectively handled by the courts."

on Mondays, and from 9am-1:30pm on Wednesdays and Fridays. *Compl.* ¶¶ 34 on p. 7. (A040-A045). At that time, the Governor's Executive Order No. 7H, which had enacted the statewide "Stay Home, Stay Safe" restrictions, had been in effect for nearly one month, social and recreational gatherings were limited to 5 people, and all public schools were closed until May 20, 2020 (A006-A021).

On April 14, 2020, a week before Connecticut reached its peak number of hospitalizations due to COVID-19,[5] Judge Carroll announced that the Judicial Branch would begin to take action on non-essential matters. (A046). First, litigants were provided a lockbox to submit non-essential civil and family filings in six courthouses. *Compl.* ¶ 30 on p. 7. (A047). In addition, for civil cases, Judges would begin issuing decisions or orders for matters that were previously argued or submitted, or matters that were non-arguable. (A046). For family cases, Judges would begin approving joint petitions for non-adversarial divorces and entering orders on requests for approval of temporary agreements. *Id.* None of those matters required parties to argue, either remotely or in-person. *Id.*

Subsequent to the announcement, short calendar for non-arguable motions resumed on May 4, 2020 and short calendar for arguable motions marked take papers resumed on May 18, 2020. *Compl.* ¶ 31 on p. 8. (A048, A054). Civil pre-trial, trial management and status conferences also resumed remotely beginning on May 18, 2020. (A054). During that same time, the Judicial Branch developed procedures that would allow parties to request approval of gestational agreements and qualified domestic relations orders remotely. (A050-A052). Family Court hearings that had been scheduled for May and June remained suspended, with the exception of hearings that

---

[5] To date, the highest number of hospitalizations due to COVID-19 in Connecticut on any given day was 1,972 hospitalizations on April 22, 2020. (A002).

were being held as essential matters. *Compl.* ¶ 32 on p. 8. (A049). But beginning on May 11, 2020, family court pre-trials and status conferences began being held telephonically. (A053).

The consideration of criminal matters was being expanded during this time period as well. On May 13, 2020, the Judicial Branch issued an update on the efforts it had taken to expand its capability to hear criminal cases. *Compl.* ¶ 36 on p. 8. (A053-A056). It noted that arraignments for those held in custody or charged with a domestic violence offense were taking place through videoconferencing to allow for appropriate social distancing. *Compl.* ¶ 36 on p. 8. (A055). State's Attorneys, Public Defenders and bail staff appeared remotely from within their offices[6] and individuals charged with a crime appeared remotely from lockup or a "second courtroom with appropriate social distancing guidelines established." *Compl.* ¶ 341 on pp. 9-10. (A055). Moreover, for protective orders that may be subject to review pursuant to *State v. Fernando A.*, 294 Conn. 1 (2009), "the criminal courts continue to schedule these matters for hearings in order to determine the appropriate restrictions that should be applied in the protective order." *Compl.* ¶ 36 on p. 8. (A055).

The May 13 announcement also noted that the criminal courts were able to review previously set bonds after court hours and had acted on motions for bail review, sentence modifications and competency hearings. *Compl.* ¶ 42 on p. 10. (A055). The ability to review bonds before arraignment began on May 6, 2020 due to the efforts of the Bail Services and Court Support Services staff working with the four largest police departments to set up phone screens and virtual

---

[6] The offices of the State's Attorneys and Public Defenders are located within the courthouses. See Contact Us-Offices and Locations, Connecticut State Division of Public Defender Services, https://portal.ct.gov/OCPD/Contact-Info/Contact-Us---Offices-and-Locations (last accessed July 2, 2020); Connecticut's Judicial Districts and State's Attorneys, Connecticut State Division of Criminal Justice, https://portal.ct.gov/DCJ/About-Us/About-Us/Judicial-Districts-and-States-Attorneys (last accessed July 2, 2020).

video rooms at the police departments. *Id.* The modified procedures for bail review included not requiring defendants to appear and allowing counsel to either appear in court or rely solely on the written motion. *Id.* The competency hearings were held by videoconferencing. *Id.*

In addition, the May 13 announcement indicated that the criminal courts were in the process of establishing procedures to enter the dismissal of cases involving defendants who had successfully completed diversionary programs, setting up procedures for parties to participate in sentencing hearings either in person or remotely, and expanding the Judicial Branch's capability to conduct remote meetings with parties for matters in which the defendant was detained in custody on a pretrial matter. (A056).

On June 4, 2020, the Judicial Branch issued an update regarding the expansion of operations. (A057-A058). The number of open courthouses increased to 17, and, as of July 6, 2020, the hours of those open courthouses resumed normal operations of 9am-5pm Monday through Friday. (A057). The update also announced that in the criminal courts, remote pre-trial conferences would begin on June 8, 2020 (before Plaintiffs filed their Complaint in this action), and that the initial focus would be cases involving defendants in custody. (A058).

### The Criminal Matter for Plaintiff Castro Referenced in Count One[7]

Count One of Plaintiffs' Complaint alleges a deprivation of the procedural due process rights of a non-custodial criminal defendant, Plaintiff Angel Miguel Castro. *Compl.*, ¶¶ 43-51 on pp. 11-12. Plaintiff Castro was arrested on May 23, 2020, on domestic violence charges. (A061).

---

[7] This Court may take judicial notice of the court files set forth in the following sections as they properly are considered public records. See *Allstate Ins. Co. v. Tenn*, 2020 WL 3489387, at *1 (D. Conn. June 26, 2020) ("The Court takes judicial notice of the court records in the Underlying Action, as it 'may ... look to public records,' including court filings, when deciding a motion to dismiss without converting the motion into one for summary judgment." (quoting *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

At his arraignment on May 27, 2020, Mr. Castro, through his attorney Attorney Robert Berke (also counsel for Plaintiffs here), requested a *Fernando A.* hearing.[8] (A059). The court did not schedule a date at the arraignment, so Attorney Berke asked, by email to Caitlin McGuire, Assistant Clerk in the Superior Court for Geographic Area #23, on June 5, 2020, if the hearing could be scheduled and heard remotely. (A068). Attorney Berke was informed that the court did not have the technology to conduct remote hearings, but that if he appeared he would be in a small hearing room either by himself or with a marshal. (A068-A069). Jennifer Robinson, Deputy Chief Clerk II for Geographical Area Matters in the Superior Court for Geographical Area #7, informed the parties by email that Mr. Castro's *Fernando A.* hearing was scheduled on the motions docket for the following day, on June 17, 2020 at 2pm. (A076). As, she did not have Attorney Berke's email address, she asked if someone would forward the motions docket to Attorney Berke. *Id.* James Dinnan, Supervisory Assistant State's Attorney confirmed that he had forwarded the motions docket to Attorney Berke and provided Ms. Robinson with Attorney Berke's email address. (A077). Plaintiff Castro's *Fernando A.* hearing was, in fact, held on June 17, 2020, and continued at Attorney Berke's request. (A060). Attorney Berke subsequently fax filed documents in support of his requests for a hearing. (A066-A067). The hearing has been continued to August 11, 2020. (A077).

---

[8]A *Fernando A.* hearing, required upon request by a defendant subject to a criminal protective order at arraignment, is a subsequent hearing held "within a reasonable period of time wherein the state will be required to prove the continued necessity of that order by a fair preponderance of the evidence, which may include reliable hearsay, and the defendant will have the opportunity to proffer relevant evidence to counter the state's case in support of the criminal protective order through his own testimony or that of other witnesses." *State v. Fernando A.*, 294 Conn. at 30. A *Fernando A.* hearing is not a full evidentiary hearing. Instead, "the state may, consistent with the defendant's federal due process rights, proceed by proffer, supported by reliable hearsay evidence, and the trial court retains the discretion to determine whether testimony from the complainant or other witnesses is necessary for the order to continue." *Id.* at 27.

**The Criminal Matters for Plaintiff Brown Referenced in Count Two**

Count Two of Plaintiff's Complaint alleges a deprivation of due process of a detained criminal defendant, Plaintiff Richard Brown. *Compl.*, ¶¶ 39-44 on pp. 12-13. Plaintiff Brown was on post-judgment probation in two criminal matters when he was charged on September 24, 2019 on manslaughter charges. (A086). Plaintiff Brown also was charged with a violation of probation charge in the two other criminal matters. (A089, A092). Plaintiff Brown is currently being held by Department of Corrections. *Compl.* ¶ 40 on p. 12. Two pretrial hearings had taken place before March 10, 2020. (A087, A091, A094). A hearing scheduled for March 9, 2020—before the emergency declaration—was continued to March 25, 2020 so the Assistant State's Attorney could provide materials to defense counsel. *Id.* The court rescheduled the subsequent pretrial hearings for April 27, 2020 and June 1, 2020. (A088, A091, A094-A095). On May 26, 2020, the pretrial hearing was rescheduled for July 6, 2020. (A096). Attorney Berke was notified of the July 6 hearing by letter dated May 26, 2020, and again by letter dated June 30, 2020. (A097-A102). The July 6 pretrial hearing took place as scheduled. (A088, A091, A094).

**The State Habeas Matter for Plaintiff Vazquez Referenced in Count Three**

Count Three of Plaintiffs' Complaint alleges a deprivation of the due process rights of a habeas litigant, Juan Vazquez. *Compl.*, ¶¶ 39-52 on pp. 13-15. Plaintiff Vazquez filed a petition for writ of habeas corpus in Connecticut state court on June 10, 2014. (A104). Ruane Attorneys entered an appearance for Plaintiff Vazquez on August 7, 2014. (A103). By way of his third amended petition, Plaintiff Vazquez alleged that he was subject to an illegal sentence on various grounds. (A110-A129). On October 18, 2018, the habeas trial was scheduled for June 25, 2020. (A108). A notice was issued on March 27, 2020, notifying Plaintiff Vazquez that non-priority habeas trials and hearings were not going forward and that the case would be rescheduled. (A106).

A second notice was issued on May 27, 2020, informing the parties that the June 2020 hearing date would not go forward. (A107).  While noting that priority would be given to matters related to the COVID-19 pandemic, the court instructed that "[i]f the parties are able to agree to dates already available, please file a scheduling order, or a caseflow request for approval by the court. Otherwise this case will be scheduled for a status conference in the near future to discuss the status of the pleadings." *Id.* Counsel for Plaintiff Vazquez did not file a scheduling order or caseflow request. (A104).

Stephen Burnham, Habeas Caseflow Coordinator at the Rockville Superior Court, emailed counsel of record for habeas matters to inform them the previously scheduled conditions of confinement habeas trials would begin to be heard beginning in July, 2020 (A130). He asked attorneys with petitions challenging underlying convictions to report on the status of their cases and indicate whether they were "trial ready" given the need to proceed remotely. (A131). He also asked the attorneys to assess their trial lists and file a continuance, or otherwise notify the Court, if the habeas trial would not lend itself to a remote trial. *Id.* To date, Mr. Burnham has not received any correspondence or pleadings from Ruane Attorneys regarding their readiness for the habeas trial of petitioner Vazquez. *Id.*

**Americans with Disabilities Act Claims of Plaintiff Ruane Referenced in Count Four**

Count Three of Plaintiffs' Complaint alleges a violation of the Americans with Disabilities Act (ADA) with respect to Plaintiff Ruane. *Compl.* ¶ 40-52 on pp. 15-17. Plaintiff Ruane alleges that he is an attorney in Connecticut and that he focuses on criminal law. *Compl.* ¶ 43 on p. 15. He further alleges to be over the age of 65 and have both heart disease and high blood pressure. *Compl.* ¶ 44 on p. 16. Plaintiff Ruane asserts that the ADA requires the provision of video or telephone services as an accommodation for a disability and that the failure to make such an accommodation

places attorneys who have medical disabilities at risk. *Compl.* ¶¶49, 51 on pp. 16-17.

## Procedural History

Plaintiffs filed this federal Complaint on June 12, 2020, sounding in four counts against Judge Carroll in his official capacity only. (ECF No. 1). Count One alleges that the federal procedural due process and Sixth Amendment confrontation rights of Plaintiff Castro, a non-custodial criminal defendant, were violated as a result of the Orders issued by Judge Carroll in response to the COVID-19 pandemic. *Compl.* ¶¶ 44-51 on pp. 11-12.

Count Two alleges that the federal procedural due process rights of Plaintiff Brown, a custodial criminal defendant, were violated as a result of Judge Carroll's COVID-19 related Orders. *Id.* at ¶¶ 40-44 on pp. 12-13. Count Three, on behalf of Plaintiff Vazquez (a state habeas petitioner), claims he is entitled to relief for a deprivation of due process, and references procedural due process without specifying whether Plaintiff Vazquez's due process claim is federal or state. *Id.* at ¶ 51 on p. 14. Count Three also references the habeas provisions in Article I, Section 9 of the United States Constitution, *id.* at ¶ 40 on p. 13, and the Connecticut Constitution. *Id.* at ¶ 41 on p. 13. Plaintiff Vazquez also appears to bring a state constitutional substantive due process claim. *Id.* at ¶ 48 on p. 14.

Count Four alleges that Plaintiff Ruane, an attorney admitted to practice in Connecticut and who is over the age of 65 with health problems, was deprived of his rights pursuant to the ADA as a result of Judge Carroll's COVID-19 related Orders. *Compl.* ¶¶ 40-52 on pp. 15-17. Plaintiffs seek declaratory and injunctive relief, specifically a special master. *Id.* at p. 18.

## ARGUMENT

### I.     Motion to Dismiss Standard

A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Nike v. Already, LLC*, 663 F.3d 89, 94 (2d. Cir. 2011), *aff'd*, 133 S. Ct. 721 (2013). The "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4104839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombley,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., and "requires more than labels and conclusions." *Twombley,* 550 U.S. at 555. Thus, unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570. Courts, however, "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286

(1986)).

In considering a motion to dismiss pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents incorporated by reference in the complaint, and documents that may be judicially noticed, *Kramer v. Time Warner*, 937 F.2d at 773. "A document is incorporated by reference when it 'makes a clear, definite and substantial reference to the document.'" *Nino v. JPMorgan Chase Bank, N.A.*, 2020 WL 1532369, at *1 (D. Conn. Mar. 31, 2020) (quoting *Stinnett v. Delta Air Lines, Inc.*, 278 F.Supp.3d 599, 608 (E.D.N.Y. 2017)). Public documents on a governmental agency's website are also considered public documents of which a court can take judicial notice. See *Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 412 (S.D.N.Y. 2011) (citing Second Circuit and district court cases in support of holding that publicly available documents on United States Food and Drug Administration are judicially noticeable).

## II.    This Court Should Dismiss Plaintiffs' Complaint on Jurisdictional Grounds

Plaintiffs bring this action pursuant to the Connecticut and United States Constitutions and the ADA against Judge Carroll in his official capacity only. *Compl.*, ¶ 10. Plaintiffs' claims should fail on several jurisdictional grounds. First, the *Younger* abstention doctrine, the *O'Shea* abstention doctrine, and Eleventh Amendment immunity (taken independently or together) bar Counts One, Two, and Three. Second, Plaintiffs have failed to meet their burden to establish standing as to any of the Complaint's four counts. Finally, events since Plaintiffs filed their Complaint have rendered Counts One, Two and Three moot.

### A.  The *Younger* Abstention Doctrine Deprives Federal Courts of Jurisdiction Over Counts One, Two and Three of Plaintiffs' Complaint

Because Plaintiffs seek declaratory and injunctive relief relating to their state criminal and state habeas cases, the doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971), compels dismissal of their claims. Under the *Younger* abstention doctrine, federal courts must abstain from

ruling in cases that contain parallel issues to those in state criminal proceedings, "certain civil enforcement proceedings, and civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions." *Disability Rights N.Y. v. N.Y.*, 916 F.3d 129, 133 (2019) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)). "[W]hen *Younger* applies, abstention is mandatory and its application deprives the federal court of jurisdiction in the matter." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2d Cir. 2002) (citing *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 816 n.22 (1976)); *see also Abuzaid v. Mattox*, 726 F.3d 311, 316 (2d Cir. 2013) (reiterating that "abstention under *Younger* is mandatory" where the requirements are met).

*Younger* abstention is appropriately invoked for Counts One, Two and Three. "*Younger* abstention is mandatory when: (1) there is a pending state proceeding, (2) that implicates an important state interest, and (3) the state proceeding affords the federal plaintiff an adequate opportunity for judicial review of his or her federal constitutional claims." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 75 (2d Cir. 2003), *cert. denied*, 541 U.S. 1085 (2004). The first and second requirements are satisfied because Counts One, Two and Three involve pending state criminal and habeas matters; *Compl.* pp. 11-15; which are matters that undeniably implicate important state interests. *Spargo*, 351 F.3d at 75 ("few interests can be considered more central than a state's interest in regulating its own judicial system"); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 435 (1982) ("it is axiomatic that a state's interest in the administration of criminal justice within its borders is an important one").

Moreover, Plaintiffs have not alleged, nor can they, either that the state court is not a competent tribunal or that the state courts could not hear any constitutional claims that Plaintiffs

are raising in this action. "[A]bstention is appropriate where the plaintiff has an 'opportunity to raise and have timely decided by a competent state tribunal' the constitutional claims at issue in the federal suit." *Spargo*, 351 F.3d at 77 (citing *Middlesex Cty. Ethics Comm.*, 457 U.S. at 437). It is the "plaintiff's burden to demonstrate that state remedies are inadequate." *Id.*, at 78; *see also Penzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) ("the burden on this point rests on the federal plaintiff to show 'that state procedural law barred presentation of [its] claim.'" (citation omitted)). To do so, a plaintiff "must demonstrate that state law bars the effective consideration of their constitutional claims." *Spargo*, 351 F.3d at 78.

Plaintiffs' Complaint is bereft of any allegations regarding any attempts to raise these constitutional claims in the state courts. Nor have Plaintiffs alleged that either state law or state procedures bars them from raising their constitutional claims in state court. Accordingly, *Younger* abstention bars this Court's consideration of Counts One, Two and Three. *Hansel v. Town Court for Town of Springfield, N.Y.*, 56 F.3d 391, 393-94 (2d Cir.), *cert. denied*, 516 U.S. 1012 (1995) (holding that the district court erred by reaching the merits of a challenge to a state's town court system where *Younger* required abstention).

**B. The *O'Shea* Abstention Doctrine Deprives Federal Courts of Jurisdiction Over Counts One, Two and Three of Plaintiffs' Complaint**

The doctrine established in *O'Shea v. Littleton*, 414 U.S. 488 (1974), also compels the dismissal of Counts One, Two and Three of Plaintiffs' Complaint. To rectify the alleged due process violations that Plaintiffs have suffered as a result of a temporary delay of their state criminal and state habeas matters due to the public health concerns associated with COVID-19, Plaintiffs seek a declaratory judgment that the Judicial Branch's policies are unconstitutional and a special master to "find facts and make recommendations regarding modifications of the Judicial Branch's policies." *Compl.* p. 18. Such remedies would constitute an "ongoing federal audit of

state . . . proceedings which would indirectly accomplish the kind of interference that [*Younger*]
and related cases sought to prevent"; *O'Shea*, 414 U.S. at 500; and, thus, are barred.

In *O'Shea*, the plaintiffs sought to challenge the state court's policies and practices relating
to bond setting, sentencing and jury fees and to enjoin the state court Judges from continuing the
unconstitutional practices. *Id.* at 491-92. The U.S. Supreme Court abstained. Noting that the
plaintiffs sought "an injunction aimed at controlling or preventing the occurrence of specific events
that might take place in the course of future state criminal trials," *id.* at 500; the Court rejected the
call to issue an injunction that "would require for its enforcement the continuous supervision by
the federal court over the conduct of the petitioners in the course of future criminal trial
proceedings . . . ." *Id.* at 501.

Since *O'Shea*, the Second Circuit has consistently applied the *O'Shea* abstention doctrine
in civil cases as well. For example, in *Kaufman v. Kaye*, 466 F.3d 83, 85 (2d Cir. 2006), the plaintiff
sought declaratory relief and an injunction requiring New York State to establish a new system of
assigning appeals in the Second Department. Finding that "the relief now sought . . . would be so
intrusive in the administration of the New York court system," the Second Circuit determined that
is "must . . . abstain." *Id.* at 86. The Court rejected the plaintiff's contention that under the
injunction, the state court could craft its own remedy, holding that "[a]ppellant—or any state court
litigant dissatisfied with the panel of judges assigned to his or her appeal—could raise compliance
issues under the putative federal injunction claiming that the state court's chosen remedy violated
the Constitution or the terms of that injunction." *Id.* at 87.

The Second Circuit again affirmed and applied the principles of *O'Shea* abstention in
*Disability Rights*, 916 F.3d at 133. In that case, the plaintiff sought declaratory and injunctive relief
to compel the state court system to alter the way guardianship proceedings were conducted in New

York State. *Id.* at 130. The Second Circuit declined, holding that "[b]ecause this Court 'has no power to intervene in the internal procedures of state courts' and cannot 'legislate and engraft new procedures upon existing . . . state practices,' the district court correctly abstained from exercising jurisdiction in this case." *Id.* at 136 (citing *Kaufman*, 466 F.3d at 86).

The kind of intervention that Plaintiffs in the present case seek are of the same kinds of intrusions that the Supreme Court and the Second Circuit have held are impermissible. The injunctive relief that Plaintiffs seek—an order allowing "a reasonable but prompt amount of time to correct the [due process] violations" and a special master "to find facts and make recommendations regarding the modifications of the Judicial Branch's policies"; *Compl.* p. 18— would subject the Judicial Branch to any dissatisfied litigant raising "compliance issues under the putative federal injunction claiming that the state court's chosen remedy violated the Constitution or the terms of that injunction." *Kaufman*, 466 F.3d at 87. Moreover, special masters are appointed pursuant to the Federal Rules of Civil Procedure 53 and absent exceptional circumstances, should not be used to control the inner operations of agencies. *See Sierra Club v. U.S. Army Corps of Engineers*, 701 F.2d 1011, 1042 (2d Cir. 1983) (citing U.S. Supreme Court cases counseling against special masters for federal agencies). Plaintiffs have not identified any exceptional circumstances that would warrant having "federal courts conduct a preemptive review of state court procedure in . . . an area in which states have an especially strong interest," and which would necessitate an "[o]ngoing, case-by-case oversight of state courts, . . . exactly the sort of interference *O'Shea* seeks to avoid." *Fishman v. Office of Court Admin. New York State Courts*, 2020 WL 1082560, at *12 (S.D.N.Y. Mar. 5, 2020) (appeal pending) (citing *Disability Rights*, 916 F.3d at 136 (internal quotation marks omitted)). The same considerations are true for requests of declaratory relief, and similarly, are impermissible. *See Disability Rights*, 916 F.3d at 137 ("the

Supreme Court held that 'ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the longstanding policy limiting injunctions was designed to avoid.'" (quoting *Samuels v. Mackell*, 401 U.S. 66, 72 (1971). Accordingly, the *O'Shea* abstention doctrine bars Counts One through Three of Plaintiffs' Complaint.

### C. The Eleventh Amendment Bars Plaintiffs' Complaint to the Extent it Seeks Retrospective Relief and/or is Seeks Relief Based on State Law

Plaintiffs purport to bring Counts One, Two and Three pursuant to the Connecticut and U.S. Constitutions. *Compl.*, ¶ 1 on p. 1, ¶ 50 on p. 12, ¶ 43 on p. 12, ¶¶ 48, 51 on p. 14. The Eleventh Amendment bars Plaintiffs' claims in those Counts for two independent reasons. First, the policies of which Plaintiffs complain are no longer in effect. Thus, Plaintiffs are seeking retrospective relief which is barred by the Eleventh Amendment. Additionally, to the extent that Plaintiffs are bringing claims pursuant to the Connecticut Constitution, the Eleventh Amendment prohibits federal courts from considering cases where "a plaintiff alleges that a state official has violated *state* law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("*Pennhurst*") (emphasis in original).[9] Accordingly, this Court should dismiss Counts One, Two and Three.

As to the first basis for dismissal, the Eleventh Amendment bars suit against a state or state official in federal court[10], unless such claim "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d 612,

---

[9] This clearly applies to Count Three, which expressly relies on the Connecticut Constitution. Counts One and Two reference only the federal Constitution and appear to bring only federal claims. That said, to the extent there is any uncertainty as to Plaintiffs' intent, the Eleventh Amendment bars any of Plaintiffs' claims to the extent they are based on state law.

[10] *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *Mary Jo C. v. NY State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d. Cir. 2013).

618 (2d Cir. 2007) (citation omitted). Both retrospective declaratory and injunctive relief are barred, because such relief—by definition—does not seek to avoid future violations of federal law. *See, e.g.*, *Szymonik v. Connecticut*, 2020 WL 1650329, at \*3 (2d Cir. Apr. 3, 2020) (Summary Order); *Bonilla v. Semple*, 2016 WL 4582038, at \*1 (D. Conn. Sept. 1, 2016) (citing *Edelman v. Jordan*, 415 U.S. 651, 663-68 (1974), and *Pennhurst*, 465 U.S. at 105). All of the policies Plaintiffs complain of either were not in effect when this Complaint was filed or are no longer operative. Thus, Plaintiffs are seeking retrospective relief which is prohibited by the Eleventh Amendment. *See Green v. Mansour*, 474 U.S. 64, 67–68 (1985) (affirming that the Eleventh Amendment barred injunctive and declaratory relief where claims were rendered moot and the relief sought became retrospective during pendency of action due to amended statutory provisions).

With respect to Plaintiff Castro, Judge Carroll announced that on May 13, 2020 that "the criminal courts continue to schedule [*Fernando A.*] hearings in order to determine the appropriate restrictions that should be applied in the protective order." (A055). When Plaintiff Castro was arraigned, and requested a *Fernando A.* hearing, on May 27, 2020, there was no Order in place preventing the hearing from going forward. (A059). And, indeed, the initial *Fernando A.* hearing occurred on June 17, 2020. (A060). With respect to Plaintiff Brown, Judge Carroll announced that beginning on June 8, 2020, before this action was filed, remote pretrial conferences would begin, and that the initial focus would be cases involving defendants in custody. (A057). Notice was sent to Attorney Berke both before and after Judge Carroll's announcement. (A097-A102). And, indeed, Plaintiff Brown's July 6 pretrial conference did go forward. (A088, A091, A094). With respect to Plaintiff Vazquez, the law firm representing him in his habeas petition was informed on June 15, 2020 that remote habeas trials would begin in July and asked counsel to assess their trial lists and inform the court of their readiness for a remote trial. (A130). As Plaintiffs seek to

challenge policies that either were not in place when this Complaint was filed or are no longer operative, the Eleventh Amendment bars those Counts.

As to the second basis for dismissal, the Eleventh bars Plaintiffs' claims to the extent they are based on the Connecticut Constitution. The Supreme Court has long held that the Eleventh Amendment bars claims where "a plaintiff alleges that a state official has violated *state* law." *Pennhurst*, 465 U.S. at 106 (emphasis in the original); *see also Raygor v. Regents of Univ. of Minnesota*, 534 U.S. 533, 541–42 (2002) (holding that supplemental jurisdiction statute does not "authorize district courts to exercise jurisdiction over claims against nonconsenting States"). It is well-established that "a federal court may not sit in judgment of whether a State or a State official has complied with its own law." *Dennehy v. Soto*, 2018 WL 4936003, at *2 (D. Conn. Oct. 11, 2018) (citing *Pennhurst*, 465 U.S. at 106). Plaintiffs purport to bring this action pursuant to Art. 1, Sections 8, 10 and 12 of the Connecticut Constitution in establishing that their substantive and procedural due process rights have been violated. The Eleventh Amendment bars those claims. *See*, *e.g.*, *Pennhurst*, 465 U.S. at 106 ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.").

### D.  Plaintiffs Castro, Brown and Ruane Lack Standing to Bring this Complaint

The allegations of the Complaint, combined with facts of which the Court may take judicial notice, establish that Plaintiffs Castro, Brown and Ruane do not have standing to bring suit against Judge Carroll. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (determining that the plaintiff lacked standing to assert malpractice claims based on the complaint's allegations and judicially noticeable facts). "The Supreme Court has called Article III standing perhaps the most important of the case-or-controversy doctrines placing limits on federal

judicial power." *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (quotation marks omitted). Thus, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quotation marks omitted). Plaintiffs have not met (and cannot meet) their burden here.

"Three elements comprise the irreducible constitutional minimum of standing: the individual[(s)] initiating the suit must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *United States v. Smith*, 945 F.3d 729, 736 (2d Cir. 2019) (quotation marks omitted). "Under established standing doctrine," courts "evaluate 'whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*.'" *Fed. Defs.*, 954 F.3d at 126 (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (emphasis in *Fed. Defs.*)).

Plaintiffs filed suit on June 12, 2020. As previously noted, there was no policy in effect that prevented *Fernando A.* hearings from being heard when Plaintiffs filed their Complaint. Two weeks before Plaintiff Castro had been arraigned, Judge Carroll announced that *Fernando A.* hearing were being scheduled. *Compl.* ¶ 36 on p. 8. (A055). It is of no moment that the Superior Court did not schedule the *Fernando A.* hearing the day Plaintiff Castro was arraigned. After Attorney Berke inquired about scheduling a *Fernando A.* hearing by email, it was scheduled and went forward. (A060, A065-066). Plaintiff Castro does not allege, nor can he, that his request for a *Fernando A.* hearing was denied. Moreover, Plaintiff Castro alleges no facts indicating that Judge Carroll's COVID-19 Orders otherwise delayed Plaintiff Castro's *Fernando A.* hearing. Therefore, Plaintiff Castro has not established that he had a "requisite stake in the outcome *when the suit was*

filed." *Fed. Defs.*, 954 F.3d at 126 (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (emphasis in *Fed. Defs.*)).

Plaintiff Brown's claims suffer from a similar problem. When Plaintiffs filed their Complaint on June 12, 2020, Plaintiff Brown's pretrial hearing had already been scheduled and there were no indications it would not go forward. Specifically, on May 26, 2020, Plaintiff Brown's pretrial conference was rescheduled for July 6, 2020, having been previously rescheduled by the Judicial Branch two other times. (A094-A096). On June 4, 2020, Judge Carroll announced that pretrial conferences, initially focusing on detained defendants (like Plaintiff Brown), would begin on June 8, 2020. (A-057). Any uncertainty that Plaintiff Brown had regarding his pretrial conference going forward was dispelled when the June 4 notice was issued, which was before Plaintiffs filed their Complaint. Yet Plaintiffs failed to inform the Court of the scheduled pretrial hearing, or allege any facts to indicate that Plaintiffs had reason to believe that Plaintiff Brown's pretrial hearing would be prevented from going forward because of any Order by Judge Carroll. Similarly, Plaintiff Brown alleges no facts—as opposed to conclusory statements—indicating that Judge Carroll's COVID-19 Orders otherwise delayed Plaintiff Brown's proceeding. Therefore, Plaintiff Brown has not met his "burden to prove [his] standing by pointing to specific facts" that allow him to invoke this Court's Article III jurisdiction for the relief he demands. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412 n.4 (2013).

Plaintiff Ruane also lacks standing to bring his ADA claim. The Second Circuit has found standing in ADA suits seeking injunctive relief, "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [services] to plaintiff's home, that plaintiff intended to return to the subject location."

*Bernstein v. City of New York*, 621 Fed. Appx. 56, 57 (2d Cir. 2015) (Summary Order) (quotation marks omitted.) (quoting *Kreisler v. Second Ave. Diner Corp.,*731 F.3d 184, 187–88 (2d Cir. 2013) (per curiam), *cert. denied,* 572 U.S. 1115 (2014)).

Plaintiff Ruane's allegations do not satisfy any of those requirements. As to the first, although Plaintiff Ruane does allege that he is over 65 years old and has heart disease and high blood pressure, he does not make any allegations to suggest that such conditions are protected disabilities under the ADA. A disability under the ADA is defined, in relevant part, as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 28 C.F.R. § 35.108(a)(i). Major life activities include, but are not limited to "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, writing, communicating, interacting with others, and working." 28 C.F.R. § 35.108(c)(i). "Whether an impairment 'substantially limits' major life activities is to be 'construed broadly,' but 'not every impairment will constitute a disability.'" *Morey v. Windsong Radiology Group, P.C.*, 794 Fed. Appx. 30, 32 (2d Cir. 2019) (quoting 29 C.F.R. § 1630.2(j)). Count Four contains no non-conclusory allegations regarding whether Plaintiff Ruane's health conditions are considered physical limitations or whether they limit, substantially or otherwise, any of his major life activities.

As to the remaining standing requirements, even if Plaintiff Ruane's allegations were sufficient to establish a disability protected by ADA, he does not allege that he was subject to an ADA violation in the first instance or provide any allegations that would allow a reasonable inference that he will be required to access the Judicial Branch's services without appropriate social distancing in violation of the ADA in the future. Indeed, on both the civil and criminal side,

the Judicial Branch announced before Plaintiffs filed this Complaint that a whole array of proceedings—from criminal and civil pretrial conferences to status conferences to arraignments— were being held remotely. (A050-A056). Moreover, the Complaint contains no allegations concerning how frequently Plaintiff Ruane was required to attend in-person court hearings before or since March 12, 2020, when the Judicial Branch began enacting new policies in response to the COVID-19 pandemic. Being admitted to practice in the state of Connecticut is simply not enough to establish standing. *Compl.*, ¶ 43 p. 15. Because Plaintiffs Castro, Brown and Ruane have failed to establish that they have standing to pursue their claims, this Court should dismiss Counts One, Two and Four.

### E. This Court Should Dismiss Plaintiffs' Complaint Because Intervening Events Have Rendered Plaintiffs' Claims Moot.

Should this Court somehow determine that neither the abstention doctrines nor the Eleventh Amendment bar Plaintiffs' claims and that Plaintiffs had standing to bring this federal action, the Court should nevertheless dismiss Plaintiffs' claims because intervening policies issued by Judicial Branch in response to the COVID-19 pandemic have rendered the action moot. "While standing doctrine determines whether a plaintiff has a personal stake in the litigation when the complaint is filed, [m]ootness doctrine determines what to do if an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation after its initiation." *Fed. Defs.*, 954 F.3d at 126 (quotation marks omitted). "A case becomes moot when it no longer satisfies the 'case-or-controversy' requirement of Article III, Section 2 of the Constitution." *United States v. Williams*, 475 F.3d 468, 478–79 (2d Cir. 2007) (internal quotation marks omitted). "[U]nder the general rule of mootness, courts' subject matter jurisdiction ceases when an event occurs during the course of the proceedings . . . that makes it impossible for the

court to grant any effectual relief whatever to a prevailing party." *Cty. of Suffolk, N.Y. v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010).

In the present case, to the extent any Plaintiff had standing when they filed this Complaint, their claims have since become moot. As to Plaintiff Castro's claims in Count One, one month before Plaintiffs had filed this Complaint, Judge Carroll had issued a notice announcing that *Fernando A*. hearings were being held and that remote pretrial conferences were in the process of being held. (A055). The initial *Fernando A*. hearing for Plaintiff Castro occurred on June 17, 2020, and was scheduled for another hearing on August 11, 2020. (A60, A66).

As to Plaintiff Brown's claims in Count Two, on May 26, 2020, Plaintiff Brown's pretrial conference was rescheduled to July 6, 2020. (A098, A110, A102). On June 4, 2020, before Plaintiffs filed this Complaint, the Judicial Branch announced that pretrial conferences would begin on June 8, 2020, with a focus on detained defendants like Plaintiff Brown. (A058). And by notice dated June 30, 2020, Attorney Berke received notification that the pretrial conference was going forward. (A97, A99, A101). The pretrial conference was held on July 6 as scheduled. (A-A088, A091, A094).

As to Plaintiff Vazquez's claims in Count Three, on June 15, 2020, three days after Plaintiffs filed this Complaint, an email was sent to the law firm representing Plaintiff Vazquez stating that remote habeas trials would begin in July and that counsel should inform the court if and when counsel was ready to proceed on previously scheduled habeas trials. (A130). Plaintiff Vazequez's counsel has not taken action in response, but no Order by Judge Carroll in any way precludes them from doing so. (A104, A130).

To the extent that Plaintiff Ruane adequately had standing to bring a claim of ADA violation, on May 13, 2020, the Judicial Branch announced that arraignments, as well as other

criminal proceedings, were being held remotely. (A052-A053). On June 4, 2020, the Judicial Branch announced that criminal pretrial conferences would begin taking place on June 8, 2020. (A058).

Because Judge Carroll's subsequent Orders have superseded any Orders that delayed certain criminal matters from going forward and Plaintiffs have all received the relief that they seek, there is no relief that this Court can grant. *Sebelius*, 605 F.3d at 140. Several federal courts have held that challenges to state COVID-19 Orders were moot under similar circumstances. *See Amato v. Elicker*, 2020 WL 2542788, at *3 (D. Conn. May 19, 2020) (denying a preliminary injunction of a municipal COVID-19 order because the challenge became moot when that order was superseded by a more restrictive Order issued by the Governor); *see also Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 612 (6th Cir. 2020) (noting that a case challenging Governor's COVID-19 Orders as applied to a church would "become moot . . . when the Governor has agreed to permit places of worship to reopen"); *Ministries v. Newsom*, 2020 WL 2991467, at *2–3 (S.D. Cal. June 4, 2020) (denying a motion for preliminary injunction as moot where the challenged Orders were superseded by new Orders); *Cameron v. Beshear*, 2020 WL 2573463, at *2 (E.D. Ky. May 21, 2020) (holding that a challenge to an Order became moot, and that neither the voluntary cessation exception nor the capable or repetition yet evading review exception avoided mootness); *Spell v. Edwards*, 2020 WL 2509078, at *5–*6 (M.D. La. May 15, 2020) (holding challenge to an Order moot); *but see Antietam Battlefield KOA v. Hogan*, 2020 WL 2556496, at *4–*5 (D. Md. May 20, 2020).

While Judge Carroll cannot "state with certainty" that it will "never be necessary" to re-impose restrictions on court operations in the future if there is resurgence of the virus, "the mere possibility that at some future date conduct similar to that engaged in by the defendants in the past

may again be contemplated is not sufficient to prevent a dismissal for mootness." *Murphy v. Benson*, 270 F.2d 419, 420 (2d Cir. 1959), *cert. denied*, 362 U.S. 929 (1960) (citing *United States ex rel. Norwegian Nitrogen Products Co. v. United States Tariff Commission*, 274 U.S. 106 (1927)). The nature of any future response to the virus "will be redetermined," *Murphy* 270 F.2d at 421, by Judge Carroll based on the circumstances that exist at that time in the exercise of the state's primary constitutional authority to protect people in Connecticut from infectious disease. *See, e.g.*, *S. Bay*, 140 S. Ct. at 1613 (Roberts, C.J., concurring in denial of application for injunctive relief). To the extent, if any, Plaintiffs had standing to bring their claims, Plaintiffs' claims are now moot and this Court should dismiss them.

## III. Plaintiffs Have Failed To State A Claim Upon Which Relief Can Be Granted[11]

To the extent, if any, this Court concludes it has jurisdiction over Plaintiffs' claims, the Court should dismiss Plaintiffs' claims because they fail to state a claim upon which relief may be granted. Specifically, the procedural due process violations Plaintiffs Castro, Brown, and Vazquez allege in Counts One through Three lack merit. In addition, in Count Three, Plaintiff Vazquez has failed to show that the delay in the hearing of his habeas trial is either a substantive due process violation or a violation of federal habeas law. Moreover, Plaintiff Castro has failed to sufficiently allege a violation of the Sixth Amendment right to confrontation in Count One. Finally, Attorney

---

[11] In this section, which challenges Plaintiffs' claims as lacking merit, all references to facts outside of the Complaint are only to documents which either are incorporated by reference or can be judicially noticed, and this Court therefore may properly consider on a Rule 12(b)(6) motion. *See Kramer v. Time Warner*, 937 F.2d at 773 ("In considering a motion to dismiss pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents incorporated by reference in the complaint, and documents that may be judicially noticed"); *Gray v. Wesco Aircraft Holdings, Inc.*, -- F.Supp.3d --, 2020 WL 1904019, at *10 (S.D.N.Y. Apr. 16, 2020). Judge Carroll believes that this Court may properly consider all the materials referenced in this section under *Kramer*, but in the event this Court disagrees Judge Carroll respectfully requests that this Court disregard any improperly referenced materials for purposes of this Motion.

Ruane has failed to allege a viable ADA claim. Accordingly, this Court should dismiss the Complaint in its entirety.

### A. Plaintiffs Castro, Brown and Vazquez Have Failed to Establish That Their Procedural Due Process Rights Were Violated By The Delays Created By The COVID-19 Pandemic.

Dismissal of Counts One through Three is warranted because Plaintiffs Castro, Brown and Vazquez have failed to establish that policies put in place by Judge Carroll in response to the COVID-19 pandemic resulted in a procedural due process violation. The gravamen of Plaintiffs' Castro, Brown and Vazquez's complaints are that the temporary delays in the handling of their state matters were unreasonable in violation of their constitutional rights. The delay between Plaintiff Castro's initial request for a *Fernando A.* hearing and the initial hearing date was three weeks. (A059-A060). The delay of Plaintiff Brown's pretrial conference was approximately three and a half months. (A087-A088, A091,A094). Although neither the Complaint nor the state court docket indicates when Plaintiff Vazquez's habeas trial will be rescheduled, it has been just over three months since he first received notification that his trial was being continued. (A108). These delays are not unconstitutional violations of their procedural due process rights.

A claim of a violation of procedural due process follows a two-step process. "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam). While it is true that the "opportunity to be heard" is a fundamental component of due process, and that opportunity must "be granted at a meaningful time;" *U.S. v. Monsanto*, 924 F.2d 1186, 1195 (2d Cir. 1991), *cert. denied*, 502 U.S. 943 (1991) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)), it does not follow that any delay in court proceedings, no matter how short, are a due process violation. And, particularly, when the delays

are due to a public health emergency that has caused over 4,000 deaths in Connecticut alone,[12] this Court should conclude that they are not unconstitutional violations of Plaintiffs' procedural due process rights.

The delays Plaintiffs complain of would fall far short of establishing a due process violation, even if the delays were not largely attributable to a pandemic of a deadly disease. *Cf. Amato*, 2020 WL 2542788, at *11 (holding that challenges to the Governor's COVID-19 Orders were not likely to succeed on their merits where because "[e]ven if the deferential *Jacobson* standard" applicable in the pandemic context "did not apply," the plaintiffs' claims would be "unlikely to succeed under standard First Amendment analysis"). The Supreme Court has "explained that procedural due process is a flexible standard that can vary in different circumstances depending on 'the private interest that will be affected by the official action' as compared to "the Government's asserted interest, including the function involved and the burdens the Government would face in providing greater process." *United States v. Abuhamra*, 389 F.3d 309, 318 (2d Cir. 2004) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004) (some internal quotation marks omitted)). Therefore, Judge Carroll will analyze each Plaintiffs' claim separately.

    1.  <u>Plaintiff Castro Would Fail to State a Procedural Due Process Claim Even Outside the Pandemic Context</u>

Plaintiff Castro's claims are based on what appears to be a three-week delay between his initial request for a *Fernando A.* hearing and the initial hearing date. (A059-A060). At the first step in the analysis, the nature of Plaintiff Castro's claimed interest counsels against finding a federal due process violation here. *See Swarthout*, 562 U.S. at 219. Although the Connecticut Supreme Court concluded that the Connecticut General Assembly intended what is now called a *Fernando A.* hearing as protection for a defendant's due process rights, the court did not squarely

_____

[12] As of July 6, 2020, Connecticut had reported 4,338 deaths due to COVID-19. (A003).

analyze whether the Fourteenth Amendment Due Process Clause required such a hearing as opposed to whether such hearings are a statutory prophylactic measure to give additional protection beyond the constitutional floor established by federal due process requirements. *See Fernando A.*, 294 Conn. at 24-29. The court did not analyze any United States Supreme Court precedent in the relevant portion of its opinion, and the one federal case it cited did not directly address the issue. *See id*.

Notably, two Justices dissented in part and concluded that federal due process did not require a *Fernando A.* hearing based on separate detailed analyses of federal precedent. *See id*. at 46-56 (Schaller, J., concurring and dissenting) (characterizing the majority opinion as "an implicit determination that due process requires the creation of this new right to an expanded, second hearing" and disagreeing with that conclusion after detailed analysis of United States Supreme Court precedent); *id*. at 70-96 (Palmer, J., dissenting in part) (noting that "I do not believe that the majority's analysis of the claim is satisfactory" and concluding that federal due process did not require the hearing at issue following detailed analysis of federal precedent). Thus, it is not entirely clear whether federal due process required that Plaintiff Castro be given a *Fernando A.* hearing at any time. To the extent such hearings are prophylactic statutory hearings under state law, they do not give rise to a federal constitutional interest; "[w]hile state law defines the underlying substantive interest, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 51 (2d Cir. 2018) (quotation marks omitted).

Even if Plaintiff Castro has a protected interest, his procedural due process claim would fail at step two because the apparent three-week delay would not have been unconstitutional even if it were not the result of a pandemic. For example, the Second Circuit held that a "more than

four-year delay" between a violation of supervised release and the issuance of a summons charging that violation did not, "in and of itself violate [the defendant's] due process rights." *United States v. Sanchez*, 225 F.3d 172, 175 (2d Cir. 2000). Rather, the defendant could only show, even theoretically, a due process violation if he "show[ed] that he was prejudiced by the delay." *Id*. at 176. That is true even if the defendant remains in custody during the delay (which Plaintiff Castro does not allege here). *See United States v. Jetter*, 577 Fed. Appx. 5, 7–8 (2d Cir. 2014) (Summary Order). Plaintiff Castro does not allege any facts supporting a claim of prejudice, nor is any prejudice apparent.

2. <u>Plaintiff Brown Would Fail to State a Procedural Due Process Claim Even Outside the Pandemic Context</u>

Plaintiff Brown alleges that he "is currently held on bond and has several pending criminal matters in the Fairfield Judicial District," that his "cases have been rescheduled numerous times because they do not fall within priority 1 matters" and that he "has been deprived of his opportunity to have a judicial pretrial, litigate, or effectively seek outstanding discovery." *Compl*., ¶¶ 40-42. Plaintiff Brown does not allege any facts regarding his claimed delay, but court records indicate that the delay of Plaintiff Brown's pretrial conference was approximately three and a half months. (A086-A094). Plaintiff alleges no facts to support his allegation that he was otherwise precluded from litigating or seeking outstanding discovery, nor are those conclusions evident.

At the first step of the analysis, Plaintiff Brown does not allege any facts that would indicate that he has a protected federal due process interest in a pretrial conference. To the extent Plaintiff is implicitly arguing that the alleged delay in a pretrial conference will delay his trial and, therefore, give rise to a due process violation, any such claim should fail. *See, e.g.*, *United States v. Milstein*, 401 F.3d 53, 63 (2d Cir. 2005) (noting that in the criminal context the Fifth Amendment Due Process Clause imposes "speedy trial safeguards" on the federal government). That is both because

the apparent approximately three and one half month delay is insufficient and because Plaintiff Brown alleges no facts to support a finding of prejudice. *See, e.g.*, *Flowers v. Warden, Connecticut Corr. Inst., Somers*, 853 F.2d 131, 133 (2d Cir. 1988). *Flowers* is instructive. There, the Second Circuit noted that a "17–month delay here, while lengthy, [wa]s nevertheless considerably shorter than those in other cases where we have found no speedy trial violation" and cited cases to support that conclusion, including a Supreme Court case upholding a 5 year delay. *See id.* (citing cases, including *Barker v. Wingo,* 407 U.S. 514 (1972)). Again, Plaintiff Brown does not allege any facts indicating—let alone establishing—any prejudice from the alleged delay. *See id.*

### 3. Plaintiff Vazquez Would Fail to State a Procedural Due Process Claim Even Outside the Pandemic Context

Although neither the Complaint nor the state court docket indicates when Plaintiff Vazquez's habeas trial will be rescheduled, it has been just over three months since he received notification that his trial was being continued. (A106). At the first step of the analysis, the weight of the authority is that Plaintiff does not have a protected right. "At least two circuits have found that delay in receiving a ruling on a discretionary state collateral appeal is not a ground for federal habeas corpus relief, finding that [n]o constitutional provision or federal law entitles [petitioner] to any state collateral review . . . let alone prompt collateral review." *McGuire v. Walsh*, 2010 WL 3420629, at *10 (E.D.N.Y. Aug. 26, 2010) (citing cases) (quotation marks omitted). While the Second Circuit has not directly addressed this issue, a number of district courts within the Circuit have reached a similar conclusion. *Id.* at *11 (citing cases). And even if Plaintiff Vazquez had a protected right, he pleads no facts as to the delay and, to the extent the record gives any indication, the apparent three and a half month delay is nowhere near the sort of delay that has been held to raise concern. That is particularly true where, as here, there are no facts to support a finding of prejudice resulting from the claimed delay. *See id.* at *12-13 (holding that nine year delay did not

establish meritorious claim where the petitioner could not "show that he was prejudiced by the delay"); *cf. Demaio v. Senkowski*, 1989 WL 62358, at *1 (E.D.N.Y. May 31, 1989) (holding that "[s]ince it has only been three months since the filing of the District Attorney's brief, it is clear that there has not been an excessive delay and therefore the petitioner state remedies, cannot be considered exhausted").

    4.  <u>Even if Plaintiffs' Complaint Would State Due Process Claims Under Ordinary Circumstances, Judge Carroll's Orders Were Well Within The Especially Broad Latitude the Constitution Gives Him In Responding to the COVID-19 Pandemic</u>

Judge Carroll believes that Plaintiffs' procedural due process claims would be subject to dismissal even if Connecticut were not in the midst of the COVID-19 pandemic. But Connecticut is. The Supreme Court has recognized for over a century—and recently reinforced—that state officials like Judge Carroll are the primary protectors of people in Connecticut from disease and that when those officials are forced "'to act in areas fraught with medical and scientific uncertainties'" federal courts must give them "'especially broad'" latitude. *S. Bay*, 140 S. Ct. at 1613 (Roberts, C.J., concurring in denial of application for injunctive relief) (quoting *Marshall*, 414 U.S. at 427). Judge Carroll's actions were well within that especially broad latitude, and this Court should not second-guess them. *See id*.

In the present case, the delays were neither arbitrary nor unreasonable. The Danbury and Stamford courthouses were closed after employees tested positive for COVID-19. (A040, A043). In April, when the Judicial Branch announced the last temporary closing of a courthouse, the Stay Home, Stay Safe restrictions enacted by Governor Lamont had been in effect for nearly one month. (A007-A009, A046). And on May 13, 2020, when the Judicial Branch announced its expanded capabilities for hearing criminal matters, Connecticut was still one week away from Phase 1 of reopening the economy. (A022-A029, A055-A056). Moreover, fewer than two months elapsed

between when the COVID-19 policies began to be enacted and when the Judicial Branch began expanding its remote capacity for criminal matters. (A037, A046).

Federal courts can intervene as to a state's infectious disease response only if the state's exercise of its primary powers is "arbitrary, [or] unreasonable," or "go[es] so far beyond what was reasonably required for the safety of the public as to authorize or compel the courts to interfere for the protection of such persons." *Jacobson*, 197 U.S. at 38. The state's action must have "no real or substantial relation to those objects, or [be], beyond all question, a plain, palpable invasion of rights secured by the" Constitution, even as those rights are defined in the emergency situation. *Id.* at 31. The temporary delays of Plaintiff Castro, Brown and Vazquez's criminal and habeas matters were a reasonable response put in place to protect the safety of the public. *See Elmsford Apartment Assoc., LLC v. Cuomo*, 2020 WL 3498456, at *16 (S.D.N.Y. June 29, 2020) (finding that executive orders issuing moratorium on evictions and foreclosure for residential and commercial tenants until August 19, 2020 was not a procedural due process violation as "the delay embodied mandated by the Order does not deny the Plaintiffs a meaningful opportunity to be heard"). As Judge Carroll stated on June 4, 2020: "We continue to plan for increasing expansion of the branch's physical footprint and all business operations in a way that places personal safety of the public, the bar and employees at the forefront while also balancing the requirement to continue to provide expanded access." (A057). The policies enacted by Judge Carroll were not "plain, palpable invasion of rights" secured by the Constitution; *Jacobson*, at 31; but rather "reasonably required for the safety of the public." *Id.* at 38.

Notably, Plaintiffs do not even assert that the precautions Judge Carroll ordered were not necessary, let alone allege facts that would support such a conclusion. To the best of our current knowledge, COVID-19 is "a novel severe acute respiratory illness" and it has "killed thousands of

people in [Connecticut] and more than 100,000 nationwide." *S. Bay.*, 140 S. Ct. at 1613 (Roberts, C.J., concurring in denial of application for injunctive relief). "Because people may be infected but asymptomatic, they may unwittingly infect others," and there is particular concern that the disease spreads indoors when "large groups of people gather in close proximity for extended periods of time." *Id*. A great deal of medical and scientific uncertainty surrounds COVID-19 and its spread, and Plaintiffs' allegations do not come anywhere near supporting a conclusion that Judge Carroll exceeded the "especially broad" latitude the Constitution grants him when facing these exceptionally difficult circumstances. *Id*.

Finally, neither Plaintiff Castro, Plaintiff Brown nor Plaintiff Vazquez have made any non-conclusory allegations that they have suffered any prejudice as a result of the delays. *See McCarthy v. Cuomo*,  2020 WL 3286530, at *5 (E.D.N.Y. June 18, 2020) (the plaintiffs failed to establish a due process violation where complaint and brief in support of TRO only recited the legal standard and made a conclusory statement that the plaintiffs' rights had been violated). Without any claims of prejudice, Plaintiffs' procedural due process claims fail. Accordingly, Counts One, Two and Three should be dismissed.

> **B. Plaintiff Vazquez Has Not Established That The Delay of His State Habeas Trial Was A Violation of His Substantive Due Process Rights Or A Violation of Federal Habeas Law**

To the extent Count Three can be understood, it appears that Plaintiff Vazquez brings the following claims arising out of his state court habeas proceeding: (1) a suspension claim under Article I, § 9 of the United States Constitution, *see Compl.*, ¶ 40 on p. 13 and ¶ 47 on p. 14; (2) a suspension claim under Article I, § 12 of the Connecticut Constitution, *see id*. at ¶ 41 on p. 13; and (3) a substantive due process claim under the Connecticut Constitution, *see id*. at ¶ 48 on p. 14;

and (4) a procedural due process claim under an unspecified constitution. *See id*. at ¶ 51 on p. 14. All of these claims lack merit.

Plaintiff Vazquez cannot state a claim under the Connecticut Constitution. As discussed above, the Supreme Court has expressly held that the Eleventh Amendment deprives this Court of jurisdiction of Plaintiff Vazquez's claims to the extent they are based on the Connecticut Constitution. *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Thus, his substantive due process claim fails. *See Elmsford Apartment Assoc., LLC v. Cuomo*, 2020 WL 3498456, at *6 ("Federal courts do not have the power to address claims that Governor Cuomo has violated state law."); *ACA Int'l v. Healey*, 2020 WL 2198366, at *4 (D. Mass. May 6, 2020) ("it is not for a federal court to police the boundaries of a state constitution for violations by its officials").

Similarly, Plaintiff Vazquez's federal claim does not have any merit. Well over a century of United States Supreme Court precedent forecloses his claim under the federal Suspension Clause; "Section 9 of article 1, as has long been settled, is not restrictive of state, but only of national, action." *Gasquet v. Lapeyre*, 242 U.S. 367, 369 (1917) (citing cases). "The Suspension Clause of the federal constitution applies only to prevent the federal government from limiting or restricting the writ of habeas corpus; it is inapplicable to the states . . . ." *Dewberry v. Third Judicial Circuit Court*, 2017 WL 6813683, at *2 (E.D. Mich. Sept. 5, 2017) (citing *Gasquet*, 242 U.S. at 369); *see also Cook v. Ryan*, 2019 WL 1938538, at *10 (D. Ariz. Mar. 1, 2019), *report and recommendation adopted*, 2019 WL 1513205 (D. Ariz. Apr. 8, 2019) (applying *Gasquet*). Because Plaintiff Vazquez brought his habeas petition in state court and "'[o]nly the right to petition the federal courts for habeas corpus and the right of the federal courts to grant a petition for habeas corpus are guaranteed by the Constitution,'" *Id.* (quoting *Kelsey v. Fitzgerald*, 574 F.2d 443, 444

(8th Cir. 1978)), he has failed to state a claim under the Suspension Clause of the United States Constitution.[13]

### C. Plaintiff Castro Has Failed To Establish That The Delay In Scheduling His *Fernando A.* Hearing Implicates The Sixth Amendment Right to Confrontation

Despite his assertions to the contrary, the three-week delay of Plaintiff Castro's *Fernando A.* hearing was not a violation of his Sixth Amendment right to confrontation. "The Sixth Amendment's confrontation right, which applies equally to defendants in state prosecutions, "means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). "The crux of [the Confrontation Clause] is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination." (internal quotation marks omitted). *U.S. v. Taylor*, 745 F.3d 15, 28 (2d Cir. 2014) (quoting *U.S. v. Jass*, 569 F.3d 47, 55 (2009)).

The Complaint is bereft of any allegations to suggest that the three-week delay in holding the initial *Fernando A.* hearing prevented Plaintiff Castro from cross examining or otherwise confronting witnesses. Plaintiff Castro does not even set forth the parameters of a *Fernando A.* hearing so that this Court could conclude that the ability to confront a witness is even available to him. To survive a motion to dismiss, a Complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

---

[13] Plaintiff Vazquez's Suspension Clause claim under the Connecticut Constitution likewise lacks merit, though this Court lacks jurisdiction to decide it. It is well-established in Connecticut law that "[t]he 'no suspension' clauses prohibit only those governmental acts during non-emergency times that 'suspend' the writ, 'that is, the right to the writ, the privilege of having it issued, and the case heard and determined, shall not be suspended.'" *Johnson v. Manson*, 196 Conn. 309, n. 15 (1985) (quoting *Macready v. Wilcox*, 33 Conn. 321, 329 (1866)). Plaintiff Vazquez has not alleged that his right to the writ, or the ability to have his matter heard and determined was terminated. Rather, he only claims that the trial, which had been scheduled for June 25, 2020 was continued to a date that had yet to be determined. *Compl.*, p. 15. A temporary delay does not rise to the level of a constitutional suspension, and there are no non-conclusory allegations made to the contrary.

(quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (quotation marks omitted). The allegations made by Plaintiff Castro are naked assertions devoid of factual enhancement and, as such, fail to state a claim for relief and should be dismissed.

### D.      Plaintiff Ruane Has Failed To Establish A Violation Of The ADA

Plaintiff Ruane has not established that the Judicial Branch's COVID-19 policies were in violation of the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A plaintiff may bring an ADA claim for injunctive relief against a state or its agent in an official capacity. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

To establish a violation of Title II, a plaintiff must show "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Hargrave v. Vermont*, 340 F.3d 27, 34–35 (2d Cir. 2003) (internal citation omitted). "A qualified individual can base a discrimination claim on one of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Pierce v. Semple*, 2018 WL 6173719, at *4 (D. Conn. Nov. 26, 2018) (quoting *Fulton v. Goord*, 591 F.2d 37, 43 (2d Cir. 2003)).

Plaintiff Ruane purports to assert a reasonable accommodation claim. As an initial matter, as discussed above, the Complaint does not allege sufficient facts to establish that Plaintiff Ruane

is a qualified individual with a disability, as he has not alleged adequately that his health conditions limit any major life activity. *See, e.g.*, *Pineda v. ESPN, Inc.*, 2018 WL 5268123, at *3 (D. Conn. Oct. 23, 2018) (holding that the plaintiff failed to an accommodation claim under the ADA where she failed to specify how PTSD symptoms impacted her ability to perform her job); *Cain v. Mandl Coll. of Allied Health*, 2017 WL 2709743, at *4 (S.D.N.Y. June 22, 2017) (holding that the plaintiff's reference to a condition was not enough to survive a motion to dismiss, where the plaintiff *inter alia* "fail[ed] to allege any specific facts connecting her symptoms to any limitation of her major life activities" and finding that "[v]ague, conclusory assertions without details on how her condition actually affects a major life activity are insufficient" to survive a motion to dismiss).

Even if Plaintiff Ruane had alleged sufficient facts about his disability to survive this Motion to Dismiss (he has not), his ADA claim would still fail. "To prevail on a reasonable accommodation claim, plaintiffs must first provide the governmental entity an opportunity to accommodate them through the entity's established procedures used to adjust the neutral policy in question. . . . A governmental entity must know what a plaintiff seeks prior to incurring liability for failing to affirmatively grant a reasonable accommodation." *Tsombanidis v. W. Haven Fire Dept.*, 352 F.3d 565, 578–79 (2d Cir. 2003). Plaintiff Ruane does not provide any facts to suggest that the Judicial Branch was aware of his disability, that he sought, at any point, to receive an accommodation for his disability or that any alleged discrimination he faced was due to his disability. Nor does Plaintiff Ruane allege that he was required to attend an in-person court proceeding at any point between when the public health emergency declaration was issued and when the Complaint was filed, or that he will be required to attend any in-person court proceedings in the future. The Complaint lacks any factual content that would allow this Court to draw a reasonable inference that the COVID-19 policies enacted by Judge Carroll were a violation of the

ADA. *See McNiece v. Connecticut*, 692 Fed. Appx. 655, 656–57 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 334 (2017) (holding that there was no ADA violation where the plaintiff "did not allege that he had requested an accommodation, or that the town had denied him one"); *Gribbin v. New York State Unified Court Sys.*, 2020 WL 1536324, at *5 (E.D.N.Y Mar. 31, 2020) (holding that there was no ADA violation where the plaintiff's allegations did not support a claim that she was denied access to the courts due to her disability). Indeed, the "absence of detail leaves questions as to why, and how" the COVID-19 policies prevented Plaintiff Ruane from accessing the courthouse; *McNiece*, 692 Fed. Appx. at 657; and fails to "nudge[ ]" his claims 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Because Plaintiff Ruane has failed to adequately allege an ADA violation, Count Four should be dismissed.

<u>**CONCLUSION**</u>

For all the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety.

DEFENDANT
HONORABLE PATRICK CARROLL, III

WILLIAM TONG
ATTORNEY GENERAL

BY: */s/ Alayna M. Stone*
    Alayna M. Stone
    Assistant Attorney General
    Federal Bar No. ct29683
    165 Capitol Avenue
    P.O. Box 120
    Hartford, CT  06141-0120
    Tel: (860) 808-5020
    Fax: (860) 808-5347
    Email: alayna.stone@ct.gov

## <u>CERTIFICATION</u>

I hereby certify that on July 8, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>*/s/Alayna M. Stone*</u>
Alayna M. Stone (#ct29683)
Assistant Attorney General
165 Capitol Avenue
P.O. Box 120
Hartford, CT 06141-0120
Tel: (860) 808-5020
Fax: (860) 808-5347
Email: alayna.stone@ct.gov